**BINNS, etc., et, Plaintiffs-Appellants v. ISABEL, et, Defendants-Appellees.**

Ohio Appeals, Second District, Franklin County.

No. 3524. Decided April 16, 1943.

Binns & Tresemer, Columbus, for plaintiffs-appellants.

Walter R. Snider, Columbus, and James I. Boulger, Columbus, for defendants-appellees.

## OPINION

By BARNES, P. J.

The above-entitled cause is now being determined as an error proceeding by reason of plaintiffs' appeal on questions of law from the judgment of the Court of Common Pleas of Franklin county, Ohio.

Plaintiffs' action was one for damages in the sum of $7500 00 by reason of a claimed breach of contract on the part of the defendants in refusing to go through with a proposal in writing, wherein the defendants had agreed to purchase certain real estate belonging to the estate of Charles J. Bassett, deceased. Under the terms of such proposal the consideration price was designated as $20,000.00, of which $10,000.00 was to be paid in cash and the balance by the conveyance of title to their hotel business in Plain City, Madison county, real and personal property subject to a first mortgage in the amount of $10,000.00.

It is alleged in the petition that this proposal or contract was executed on or about February 3, 1939. It is further alleged that the plaintiffs, as executor and trustee, accepted the above offer, subject to the approval of the Probate Court of Franklin county, Ohio.

Following the execution of the paper writing, plaintiff, on or about February 7, 1939, filed his action in the Probate Court of Franklin county, Ohio, seeking to sell the real estate referred to in this action for the purpose of paying debts of plaintiff's decedent's estate.

Under the will of the decedent no power of sale was given to the executor.

Plaintiffs' petition for the sale of real estate was in the usual form, and was followed by issuance and service of summons or service by publication on all named defendants.

On or about April 3, 1939, very soon after the case was at issue, the Probate Court issued an order of private sale in the usual form. Within a day or two the executor made a return in substantially the same terms as were contained in the above-described proposal or contract. The return was based on the written proposal.

It appears from the record that the defendants were represented by a man by the name of Pierce, who was a registered real estate broker. This broker had known about the real estate belonging to the Bassett estate through some former contacts with the executor. In his efforts to secure a deal through which he would earn a commission, he had represented to the defendants that he would assist in arranging for the financing by procuring a $10,000.00 loan for the defendants, to be secured by the property by them to be acquired. The broker was unable to secure a loan for the amount required. Without obtaining a $10,000.00 loan, the defendants were unable to go through with their proposal.

The executor procured from the Probate Court a citation in contempt to issue against the defendants by reason of their failure to go through with the deal. At a hearing on this contempt proceeding further time was extended within which the defendants might make personal efforts to raise the necessary finances. They were unable to so do, and a few months later sold their hotel property, including furnishings, for an amount slightly less than $10,000.00.

About this time the plaintiff filed with the Probate Court a written request for instructions relative to the deal with the defendants, and also further reported that he had a cash offer for the sale of the estate property at the sum of approximately $13,000.00.

The Probate Court confirmed the sale to the new purchaser and directed the executor to bring an action against the defendants for damages by reason of breach of contract.

The amount of damages was based on the difference between the $20,000.00 claimed to be the sale price to defendants and the approximately $13,000.00 at which the property was subsequently sold.

In conformity to the instructions from the Probate Court, the plaintiff filed his action for damages against the defendants.

After many motions, demurrers and other pleadings, the case was at issue and came to trial. The record is rather large, containing some three hundred pages of typewritten matter. This would lead to the inference that the case presents many disputed factual questions, but strange to relate, counsel in their brief state that there are no disputed facts and that the question for our determination is solely one of law.

Counsel for plaintiffs urge that the judgment of the Probate Court is final and cannot be attacked collaterally, as is being done by the defendants.

Counsel for defendants, while suggesting the doubtful existence of any legal contract, yet in the main devote their argument to attacking the judgment of the Probate Court, either directly or collaterally, upon the ground that the Probate Court had no authority to confirm a trade or exchange of properties where only part was paid in cash.

The trial court adopted the theory of the plaintiff as to the issuable question, but decided the question against the plaintiff and in favor of the defendants.

Voluminous and well considered briefs are presented by counsel representing the respective parties. We think we can safely say that the subject has been exhausted and there remains no necessity for independent research. We are also favored with the excellent opinion rendered in writing by the trial court in overruling the motion for new trial.

We have given very careful consideration to the briefs of counsel, and have examined all cited cases which appear in any way to be pertinent.

All through our study of the instant case there is presented to our minds a theory not stressed in argument but which seems to us to be determinative upon principles of law so well recognized as to require no citation of authorities. We always hestitate to decide a case upon legal principles not urged by counsel, but in the instant case we can not refrain from mentioning our theory, which we feel is determinative.

We start with the proposition that plaintiffs' action is one for breach of contract. The language of the petition will bear no other construction, and this is in line with the order of the Probate Court that plaintiff should bring his action against the defendants for breach of contract.

This brings us to a consideration of the executed writing claimed to be a contract sued upon. We have carefully read this document, introduced in evidence as Exhibit 1, and we have no difficulty in arriving at the conclusion that it is not a contract, as the term 'contract' is recognized under the law.

"To constitute a valid contract there must be parties capable of contracting, a meeting of the minds, a lawful subject-matter, and a

sufficient consideration." **O. Jur., Vol. 9, Subject, "Contracts", p. 236, Sec. 2.**

There should be no difficulty in determining that at the time of the signing of the purported proposal or contract, the plaintiff-executor was not legally capable of contracting. It is true that he was executor of the estate of Charles J. Bassett, but the mere appointment as executor would not give the power to sell real estate, unless such authority was given under the will of the decedent. Such was not a provision of the will in the instant case. There were debts against the estate which would make necessary a sale of the real estate in order to pay these debts but again this alone would not authorize the executor to make a sale. It is obvious that if he could not make a sale, he could not enter into a contract of sale. Furthermore, it is apparent that the executor could not bind the estate under contract of sale before he had procured an order of sale. Not being legally capable of entering into a contract, the purported proposal claimed to be a contract, would lack mutuality. The defendants under no circumstances could have compelled performance.

Furthermore, there was no consideration. In so stating, we recognize that a promise for a promise may support the requisite of consideration, but the promise of each must be binding and enforceable. As heretofore stated, there was no enforceable obligation against the plaintiff-executor. It is true that the executor, and the executor alone, could file his petition for an order of sale, but independent of the order of the court, the executor had no right to sell. After the case had advanced to the point that an order of private sale was issued to the plaintiff, then, and not until then, could the executor obligate the estate by making any contract of sale and even then it was essential that he procure a confirmation from the court before a deed could be made.

The lack of power to contract is further illustrated under the following situation: Let us suppose that the proceedings to sell have advanced to the point that an order of sale is issued. A fiduciary then attempts to enter into a written contract with the prospective purchaser, but immediately thereafter there appears a new purchaser who is willing to buy at an advanced price. Under this situation, the executor must present to the court his better offer. The court, of course, will instruct him to sell to the highest bidder. In fact, it can scarcely be said that a fiduciary can bind an estate under a contract of sale at any time before the actual confirmation by the Probate Court.

The proposal introduced in evidence as Plaintiff's Exhibit 1, and claimed to be the contract sued upon, was nothing more than a tentative or prospective offer. For this reason plaintiff would not have any right of action under Plaintiff's Exhibit 1.

This would be true, even though the proposal did not have the infirmities of a trade or exchange proposition rather than on the basis of a cash sale.

Under our construction of plaintiff's Exhibit 1, nothing further need be said in support of our conclusion that under the state of the record plaintiff had no right of action.

However, we might say that the fact that the proposal contains provisions for a trade or exchange of properties instead of a cash sale, would be an added reason why the proposal could not be considered a contract.

The fact that the Probate Court approved the proposal for exchange and gave to the executor an order of sale substantially on the same terms of the proposal, would not add anything to this characterization.

We have no difficulty in determining that the Probate Court did not have the power under the statute to order or confirm the executor's return of a trade or exchange of properties.

This is the question that is argued very seriously by counsel representing the respective parties, it being the contention of the plaintiff that the Probate Court, having jurisdiction of the parties and the res, such order or judgment of the Probate Court could not be attacked collaterally. This is not the rule under the attending facts of the instant case, and it was so held by the Common Pleas Court. This question is so thoroughly briefed, that we do not find it necessary to enter into any prolonged discussion or review of authorities.

The written opinion of the trial court in overruling motion for new trial reviewed the authorities and determined that the Probate Court did not have the power to grant an order of sale to the executor on the terms of part cash and the balance an encumbered hotel property in Plain City, together with the furnishings and equipment.

The court based its conclusions mainly on the provisions of §10510-40 GC, wherein the Probate Court was granted the power to issue orders of sale on terms and conditions that the purchase money shall be paid either in whole or in part by cash, or on deferred payments, with the deferred payments being secured as prescribed under §§10510-42, GC.

The mere fact that the Probate Court had jurisdiction of the parties and the res, is not determinative of the question. In addition, it would be necessary to search the statute to ascertain if the court had the power to make the order that was made. The power granted to the court is a limitation upon his jurisdiction. The authorities universally so hold.

We are fully aware of the rule prohibiting collateral attacks. This rule has a limited application. It applies where the court has authority to make its order, but certain procedural steps were not followed strictly.

In the instant case the court did not have the power to make the order and hence the order made was beyond the jurisdiction of the court. As heretofore stated, this question has been so thoroughly and well analyzed by the trial court that we adopt his opinion as our own without further comment.

Finding no prejudicial error, the judgment of the Court of Common Pleas will be affirmed and costs adjudged against the appellant.

Entry may be drawn accordingly.

HORNBECK and GEIGER, JJ., concur.